UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLAUDIA J. BOSTICK,

                            Plaintiff,

            -against-

AMERICAN EXPRESS COMPANY; BANK
OF NEW YORK MELLON CORPORATION,

                            Defendants.

24-CV-5484 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action alleging that Defendants violated her

rights.[1] She sues American Express Company ("American Express") and Bank of New York

Mellon Corporation ("Bank of New York Mellon"). By order dated August 8, 2024, the Court

granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of

fees. For the reasons set forth below, the Court dismisses the amended complaint, but grants

Plaintiff 30 days' leave to replead her claims in a second amended complaint.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is

frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see*

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

---

[1] Plaintiff originally filed this action in the United States District Court for the Middle
District of Georgia. *See Bostick v. Am. Express Co.*, No. 5:24-CV-0231 (TES) (M.D. Ga. July
18, 2024). On July 17, 2024, Plaintiff filed an unsolicited amended complaint. (ECF 3.) By order
dated July 18, 2024, the Middle District of Georgia transferred the action to this court. (ECF 4.)

dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following allegations are taken from the amended complaint. On January 26, 2024, and January 27, 2024, American Express "issued an unfavorable decision in responding to an application provisioned by Plaintiff, requesting right to access credit." (ECF 3, at 2.) American Express Receivable Financing Corporation III, LLC, which appears to be a separate entity, "took

a security interest in the payment intangible then securitized the asset in the American Express

Credit Account Master Trust." (*Id.*)

> Plaintiff alleges,

> American Express National Bank is the owner of the accounts which contains
> receivables that are purchased by American Express Receivables Financing
> Corporation III, LLC, pursuant to the purchase agreement and then transferred by
> American Express Receivables Financing Corporation III, LLC to the American
> Express Credit Account Master Trust.

> American Express National Bank utilized their role as a sponsor in the
> securitization structure and facilitated the sale of my self-liquidating general
> intangible to American Express Financing Corporation III, LLC as depositor and
> transferor then to the Master Credit Trust. The payment intangible is self-
> liquidating pursuant to [federal law] and is an obligation of the U.S. government.

(*Id.*)

> Plaintiff further asserts that "[c]redit accounts are a subset of receivables or payment

intangibles that are specifically related to credit-based transactions." (*Id.*) She maintains that, "in

accordance with the [Uniform Commercial Code ("UCC")], credit accounts would therefore fall

under the broad definition of 'accounts' or 'payment intangible.'" (*Id.*)

> Defendant Bank of New York Mellon, "as the securities intermediary with Stacey

Poindexter as trustee in place, holds the underlying security on behalf of the entitlement holder,

who is the purchaser according to the legal framework of the [UCC]." (*Id.* at 3.)

> Furthermore,

> Plaintiff, as a purchaser with protected purchaser rights according to [the UCC]
> controls the security entitlement as the entitlement holder and does not have
> notice of any adverse claim. Also pursuant to [the UCC], if the purchaser gives
> value and obtains control of the security entitlement, they qualify as a bono fide
> purchaser. A bona fide purchaser is someone who exchanges value for property
> without any reason to suspect irregularities in the transaction. By definition, a
> bona fide purchaser cannot have actual or constructive notice as to defects in the
> seller's right to transfer title to the property. This grants Plaintiff control over any
> prior security interests.

> Plaintiff, as the entitlement holder who is also the purchaser has the right to a no-action pledge from the securities intermediary which means the trustee cannot take any action with respect to the security entitlement without the purchaser's consent.

(*Id.* at 4.)

> On July 2, 2024,

> Plaintiff submitted a valid entitlement order via Register Mail . . . to Defendant to change the Plaintiff's security entitlement position into another available form of holding for which the entitlement holder is eligible. The exact nature and CUSIP number of which Plaintiff is unaware, as Defendant failed to provide Plaintiff with the information.

(*Id.* at 5.)

Plaintiff asserts that "a securities intermediary is obligated to its entitlement holder for a payment or distribution made by the Issuer of a financial asset." (*Id.*) Bank of New York Mellon "as securities intermediary and trustee failed and refused to execute Plaintiff's order," which Plaintiff maintains "constitutes conversion of Plaintiff's property interest in the securities entitlement." (*Id.*) As a result of

> Defendant's conversion, Plaintiff has been deprived of the ability to transact in the securities entitlement and has suffered damages in an amount not less than $100,000 which represents the minimum denomination for which American Express issues debt securities, representing the estimated value of the unexecuted order, the precise amount of which is unknown due to Defendant's failure to execute the order.

(*Id.*)

Plaintiff asserts that Defendants' conduct is "indicative of insider trading" and violates Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)") and Rule 10b-5, promulgated by the Securities Exchange Commission. She further asserts that Defendants violated Section 11 of the Securities Act of 1933 ("Section 11"). Plaintiff also invokes Section 8-122 of the UCC "as adopted by the State of Georgia." (*Id.*)

Plaintiff seeks the $200,000,000 in damages and an order from the Court directing that: (1) the "Securities Register . . . update the Securities Register documenting Plaintiff's beneficial ownership of the securities"; (2) American Express provide to Plaintiff "an open ended consumer credit plan . . . for the denied Platinum Card and Gold American Express Card . . . [w]ith a daily cash limited of $9,999.99" for each card, and for American Express to "deliver the credit cards by next day air to Plaintiff's address"; (3) American Express "directly pass through 100% of the Principal and Interest payments with statements closing out monthly"; (4) Bank of New York Mellon "to return 80% of the securitized asset net economic benefit to Plaintiff's Securities Account with trustee retaining 20% of the net economic benefits for performing fiduciary duties"; (5) Bank of New York Mellon "to return 80% of the securitized payment intangible cash flows with the trustee retaining 20% of the cash flows for performing fiduciary duties"; and (6) Bank of New York Mellon to "share the CUSIP number developed." (*Id.* at 6.)

## DISCUSSION

As a preliminary matter, Plaintiff's amended complaint does not comply with Rule 8 of the Federal Rules of Civil Procedure because it does not contain a short and plain statement showing that she is entitled to relief. The amended complaint is filled with financial jargon and conclusory declarative statements that overshadow any actual facts Plaintiff may be alleging and obscure any legal claims she may be asserting. As far as the Court is able to determine, Plaintiff is attempting to assert federal claims arising from American Express denying her a credit card and claims under federal securities laws, as well as various claims under state law. The Court dismisses those claims for the reasons discussed below. If Plaintiff submits a second amended complaint, it must comply with the requirements of Rule 8.

### A.    Claims under federal law

#### 1.    Denial of credit

To the extent Plaintiff is asserting that her rights under federal law were violated when American Express denied her access to credit, the complaint does not suggest any viable claim. Plaintiff alleges that she was "issued an unfavorable decision" in response to her request for credit, but she alleges no facts explaining why American Express denied her credit or that the denial of credit violated any of her federal rights. (ECF 3, at 2.) While a federal law, the Equal Credit Opportunity Act, 15 U.S.C. § 1691, prohibits a creditor from discriminating against an applicant for credit "on the basis of race, color, religion, national origin, sex, marital status or age," Plaintiff does not allege that American Express's decision to deny her credit was based on any of these protected characteristics. Plaintiff does not assert, nor can the Court identify, any other viable federal cause of action arising from her allegation that American Express denied her application for credit.

The Court therefore dismisses any federal law claims Plaintiff may be asserting arising from her denial of credit for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In light of Plaintiff's *pro se* status, the Court grants her 30 days' leave to replead any federal claims arising from her denial of credit in a second amended complaint that complies with Rule 8 by containing a short and plain statement showing that she is entitled to relief.

#### 2.    Claims under securities law

Plaintiff asserts that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933. Section 10(b) prohibits the use of "any manipulative or deceptive practice 'in connection with the purchase or sale of any [registered] security . . . .'" *Vladimir v. Bioenvision Inc.*, 969 F. Supp. 2d 473, 484 (S.D.N.Y. 2009) (quoting

15 U.S.C. § 78j(b)) (alteration in original). To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege the following elements:

> (1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation;" (5) economic loss; and (6) "loss causation," i.e., a causal connection between the material misrepresentation and the loss.

*Vladimir*, 606 F. Supp. 2d at 484 (quoting *Dura Pharm., Inc. v. Boudo*, 544 U.S. 336, 341-42 (2005)). Here, Plaintiff has not alleged facts suggesting, among other things, that she participated in the purchase or sale of a security, that Defendants made a material misrepresentation, or that they acted with wrongful intent. She therefore does not state a claim under Section 10(b).

Section 11 provides a private right of action to "investors of a security if 'any part of the registration statement, when such part became effective, contained an untrue statement of material fact or omitted to state a material fact.'" *Allen v. Citigroup Glob. Mkt. Holdings, Inc.*, No. 21-CV-2387 (ALC), 2023 WL 2368833, at *3 (S.D.N.Y. Mar. 6, 2023) (quoting 15 U.S.C. § 77k(a)). "[A] misrepresentation of fact is material if 'an investor would attach importance to it in making an investment decision.'" *Ho v. Douyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 562 (S.D.N.Y. 2012) (quoting *In re APAC Teleservice, Sec. Litig.*, No. 97-CV-9145 (BSJ), 1999 WL 1052004, at *9 (S.D.N.Y. Nov. 19, 1999)). Furthermore, a plaintiff asserting a claim of fraud under Section 11 must also meet the heightened particularly pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015). Here, nothing in the complaint suggests that Plaintiff was an investor in a security or

that any of the Defendants' registration statements included a misrepresentation of material fact. Plaintiff therefore does not state a claim under Section 11.

For these reasons, the Court dismisses Plaintiff's claims under Section 10(b) and Section 11 for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, the Court grants her leave to replead her claims in a second amended complaint that complies with Rule 8.

## B.    Claims under state law

To bring a state law claim in federal court, a plaintiff must either allege facts demonstrating that the court has diversity of citizenship jurisdiction of the action, or, if the plaintiff asserts a viable federal claim, the court can exercise supplemental jurisdiction of the state law claims.

### 1.    Diversity of citizenship jurisdiction

To establish diversity of citizenship jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). For diversity purposes, an individual is a citizen of the State where he or she is domiciled, which is defined as the place where the individual "has his [or her] true fixed home . . . and to which, whenever he [or she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* A corporation, however, is a citizen "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (a corporation's principal place of business is its "nerve center," usually its main headquarters).

In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted).

Here, Plaintiff states that she is a resident of the State of Georgia. On her civil cover sheet, she states that American Express is a resident of the State of New York. (ECF 3-1, at 1.) Nowhere in the amended complaint does Plaintiff allege the state in which American Express is incorporated or the address of the headquarters and state of incorporation of Bank of New York Mellon. Because Plaintiff does not allege facts demonstrating the parties are diverse, the amended complaint does not demonstrate that the Court has diversity jurisdiction of any state law claims Plaintiff may be asserting.[2] If Plaintiff wishes to bring state law claims under the Court's diversity jurisdiction in her second amended complaint, she must allege facts demonstrating that the parties are diverse and that her claims are worth more than the $75,000 jurisdictional minimum.

## 2.    Supplemental jurisdiction

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its

---

[2] The Court also notes that, although Plaintiff is seeking $200,000,000 in damages, it is unclear from the allegations in her complaint that her claims are worth more than the $75,000 jurisdictional minimum required to establish diversity jurisdiction.

supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

If Plaintiff files a second amended complaint that states a viable federal claim, and she does not allege facts demonstrating diversity of citizenship jurisdiction, the Court will reconsider at a later stage whether to exercise supplemental jurisdiction of any state law claims Plaintiff wishes to assert.

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because the Court cannot say at this stage that leave to amend would be futile, the Court grants Plaintiff 30 days' leave to amend her complaint to state a viable claim under federal law, or, if she wishes to pursue only state law claims under the Court's diversity jurisdiction, to allege facts demonstrating that the Court has diversity jurisdiction of her claims.

If Plaintiff does not file a second amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

The Court dismisses the amended complaint, filed *in forma pauperis* under 28 U.S.C.

§ 1915(a)(1), for failure to state a claim on which relief may be granted, *see* 28 U.S.C.

§ 1915(e)(2)(B)(ii), with 30 days' leave to replead.

The Court declines to exercise supplemental jurisdiction of any state law claims Plaintiff

may be asserting. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would

not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See*

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil

judgment is entered.

SO ORDERED.

Dated:   November 13, 2024
         New York, New York

                                    /s/ Laura Taylor Swain
                                    LAURA TAYLOR SWAIN
                                    Chief United States District Judge